IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

BK 10-73107

IVAN JAMES BURNS
SHARON ANITA BURNS

      Debtors.

AP 11-70010

JIMMY HALL,

      Plaintiff,

vs.

IVAN JAMES BURNS,

      Defendant.

## MEMORANDUM OPINION

This adversary proceeding came before this court on August 22, 2012, for trial on Jimmy Hall's ("Plaintiff") Amended Complaint to Determine Dischargeability and Requesting Other Relief (AP Doc. 14). J. Paul Whitehurst appeared on behalf of Plaintiff; Eric M. Wilson appeared on behalf of Ivan James Burns ("Debtor"). After reviewing the evidence admitted at trial and the arguments of the parties this court **OVERRULES** Plaintiff's objection to dischargeability brought pursuant to 11 U.S.C. § 523(a)(6) and finds that the debt owed to Plaintiff is dischargeable.

## JURISDICTION

The district court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(a) & (b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984 pursuant to 28 U.S.C. § 157(a). The bankruptcy court may enter an appropriate order and judgment pursuant to 28 U.S.C. § 157(b)(I).

1

## FINDINGS OF FACT

Debtor has owned and operated several businesses since he began his first business in 1998. (Bk. Doc. 1). The ones relevant to this case are Burns Construction Company, Inc. ("Burns Construction") and Burns Excavating, L.L.C. ("Burns Excavating"). Burns Construction acted as a general contractor on construction sites. (Bk. Doc. 1). Burns Excavating excavated and hauled dirt from construction sites. (Bk. Doc. 1).

In 2006, Debtor realized that he needed to hire an employee to provide landscaping services, to drive trucks/tractors, to lay sod, and to perform various other related duties for Burns Construction and Burns Excavating. Plaintiff was hired soon thereafter at a starting salary of $13.00 per hour. Debtor testified that he informed Plaintiff, prior to Plaintiff's hiring, that Debtor could not afford to pay overtime, but that Plaintiff could work as many hours as he wanted and Debtor would pay him an extra $1.00 an hour.[1] Debtor further testified that he did not know that federal law prohibited him from paying his employees less than the statutorily prescribed amount for overtime, even if such employees agreed to a lesser amount. Plaintiff testified that he and Debtor never discussed overtime pay prior to his hiring, and that Debtor never offered to pay him an additional $1.00 per hour. In addition, Timothy Tindle, Debtor's current pastor and former employee, testified that Debtor never told him that Debtor could not pay overtime.[2]

While Plaintiff worked for Debtor, he kept track of the hours he worked and would turn in

---

[1] Plaintiff admitted two pay stubs into evidence. The first pay stub shows that Plaintiff worked 40.75 hours the week of February 11, 2010 through February 17, 2010 and was paid $15.00 an hour for a total of $611.25; the second pay stub shows that Debtor worked 43.00 hours during the week of January 14, 2010 through January 20, 2010 and was paid $15.00 an hour for a total of $645.00. (Plaintiff's Exhibit 1). Plaintiff was paid the same hourly wage for all hours worked and was not paid a higher wage for the overtime he worked. This could mean two things: Debtor's testimony is correct and he was paying Plaintiff an extra $1.00 an hour, or Plaintiff's testimony is correct and Debtor was not paying Plaintiff anything extra. Because it is not necessary for the resolution of this adversary proceeding for this court to determine whose testimony is correct, this court will leave the question open.

[2] Tindle further testified that he did not receive an hourly wage, but was paid a certain amount for each house that he and his team completed. He did testify that he was not paid overtime, although he may have actually worked more than 40 hours some weeks.

2

Case 11-70010-CMS    Doc 30    Filed 02/27/13    Entered 02/27/13 16:35:32    Desc Main
Document    Page 2 of 10

such hours at the end of the pay period.³ Sharon Burns, Debtor's wife, handled all the bookkeeping and record keeping. When Plaintiff turned in his hours for the previous week, she would input the information into the company computer system, calculate the appropriate amount of compensation, and write Plaintiff a check. Plaintiff testified that he turned in time sheets showing that he worked overtime, but did not receive proper compensation for the overtime hours he worked.⁴ Unfortunately, a new computer program was installed on the company computer, and Debtor can no longer access the payroll records that are relevant to Plaintiff's lawsuit. Therefore, other than the two pay stubs introduced by Plaintiff, there is no documentary record as to how many hours Plaintiff worked and how much Plaintiff was paid while he worked at Burns Construction and Burns Excavating.

Despite the problems Plaintiff and Debtor may be having now, it is clear that while Plaintiff worked for Debtor they had a close relationship. Plaintiff testified that Debtor was a good man who was good to everybody. Plaintiff further testified that he had a great time while he worked for Debtor. Debtor testified that he considered Plaintiff a good friend and that he would have done anything for Plaintiff prior to the filing of the lawsuit. Debtor further testified that Plaintiff was a very good employee. In addition, Debtor and Plaintiff both testified that Debtor helped Plaintiff numerous times while Plaintiff was employed with Burns Construction and Burns Excavating: First, Debtor allowed Plaintiff to use a work truck for personal use for two weeks when Plaintiff's personal vehicle broke down; Second, Debtor gave Plaintiff $500 on one occasion so that Plaintiff could visit his daughter in Texas; Third, Debtor gave Plaintiff an air compressor. Debtor also testified that he would occasionally pay Plaintiff for a full 40 hours of work even though Plaintiff had not worked

---

³There has been no allegation or assertion that the time sheets submitted by Plaintiff were inaccurate. Debtor testified that he never doubted that the hours turned in by Plaintiff were accurate.

⁴This court finds that Plaintiff knew he was not being paid overtime and that Plaintiff did not complain about not being paid overtime while employed at Burns Construction and Burns Excavating. Both Debtor and Timothy Tindle, Debtor's current pastor and former employee, testified that Plaintiff did not complain to Debtor, a supervisor, or anyone else about not receiving overtime pay. Debtor further testified that Plaintiff never demanded overtime or threatened to sue because he was not being paid overtime during the time that Plaintiff worked for Burns Construction and Burns Excavating.

3

a full 40 hours. Plaintiff testified Debtor never paid him for more hours than he actually worked. Regardless, it is clear from the testimony of both parties that there was no ill-will between them while Plaintiff was an employee of Burns Construction and Burns Excavating.

When the housing market crashed in 2008, it took the construction business and the excavation business along with it. The business available for Burns Construction and Burns Excavating became scarce, and its employees, including Plaintiff, were no longer able to work 40 hours per week.[5] Debtor informed his employees, including Plaintiff, that business was bad and that he would understand if they needed to quit and find new employment. While business at Burns Construction and Burns Excavating was slow, Plaintiff received unemployment compensation from the Alabama State Unemployment Office. Plaintiff received unemployment compensation while he was working sporadically for Burns Construction and Burns Excavating. Plaintiff did not report this income to the Alabama State Unemployment Office.[6] Plaintiff remained an employee of Burns Construction and Burns Excavating for two more years, but finally quit in 2010 when Debtor began talking about filing bankruptcy. Plaintiff testified that he did not want to leave, but that he received an offer for another job that he could not afford to turn down. Plaintiff called Debtor's son one morning and told him to inform Debtor that Plaintiff quit.

After Plaintiff ceased working for Burns Construction and Burns Excavating, he filed a suit

---

[5] It was during this time that Debtor allegedly paid Plaintiff for a full 40 hours even though Plaintiff did not work a full 40 hours.

[6] At some point, the Alabama State Unemployment Office found out that Plaintiff received unemployment compensation while also working at Burns Construction and Burns Excavating. Plaintiff asserts that Debtor contacted the unemployment office in retaliation for Plaintiff filing a cause of action against Debtor in the United States District Court for the Northern District of Alabama. Plaintiff testified that Debtor knew he received unemployment compensation while still an employee. Further, Plaintiff's wife testified that she overheard a conversation between Plaintiff and Debtor concerning the drawing of unemployment compensation while working. Debtor denied this conversation took place and also denied that he informed the Alabama State Unemployment Office that Debtor received unemployment compensation while working. Specifically, Debtor testified that the only communication he had with the Alabama State Unemployment Office was to respond to a letter he received. In his response, Debtor informed the unemployment office that Debtor quit. At best, the testimony of Plaintiff and his wife would indicate that Debtor knew Plaintiff received unemployment compensation while also working at Burns Construction and Burns Excavating. Their testimony does not constitute evidence that Debtor informed the Alabama State Unemployment Office of this fact.

4

against Debtor in the United States District Court for the Northern District of Alabama for violations of the Fair Labor Standards Act. Specifically, Plaintiff alleged that Debtor violated 29 U.S.C. § 207(a) by failing to pay Plaintiff time-and-a-half for overtime hours worked. Shortly thereafter, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. (Bk. Doc. 1). Plaintiff then commenced this adversary proceeding by filing a Complaint to Determine Dischargeability and Other Relief. The Complaint asserted that Debtor failed to pay Plaintiff time-and-a-half his regular rate of compensation for hours worked in excess of forty hours in violation of 29 U.S.C. § 207(a). The Complaint further alleged that when Plaintiff filed a Fair Labor Standards Act complaint against Debtor, Debtor retaliated against Plaintiff in violation of 29 U.S.C. § 215(a)(3) by notifying the Alabama State Unemployment Office that Plaintiff received unemployment compensation benefits while still an employee of Burns Construction and Burns Excavating. Plaintiff alleges that he suffered injuries as a result of Debtor's conduct and that his claims against Debtor for violations of 29 U.S.C. § 207(a) and 29 U.S.C. § 215(a)(3) are nondischargeable pursuant to 11. U.S.C. § 523(a)(6).

## CONCLUSIONS OF LAW

Plaintiff asserts that he is owed a debt because he was not properly compensated for the overtime he worked while an employee of Burns Excavating and Burns Construction in violation of 29 U.S.C. § 207 and because he was retaliated against in violation of 29 U.S.C. § 215(a)(3). Plaintiff further asserts that such debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). An individual debtor who files a petition under Chapter 7 of the Bankruptcy Code is generally granted a discharge from all debts that arose before the filing of the bankruptcy petition. 11 U.S.C. § 727(b). However, certain acts or conduct of the debtor can lead to the forfeiture, either in whole or in part, of such discharge. See, e.g., 11 U.S.C. § 523. At issue here is whether the exception to a debtor's general discharge laid out in 11 U.S.C. § 523(a)(6) is applicable in this case. Section 523(a)(6) provides, in pertinent part, that: "A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt . . . . for willful and malicious injury by the debtor to another

5

entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The plaintiff bears the burden of proof in a nondischargeability cause of action and must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654 (1991). Therefore, to establish a prima facie case under § 523(a)(6), Plaintiff must establish by a preponderance of the evidence that: (1) there is a debt owed to Plaintiff; (2) the debt owed is one for willful injury; and (3) the debt owed is one for malicious injury. See 11 U.S.C. § 523(a)(6).

This court will first address whether Plaintiff is owed a debt. Plaintiff asserts that he is owed two debts: First, he asserts that he is owed a debt because he was not properly compensated for the overtime he worked while an employee at Burns Excavating and Burns Construction in violation of 29 U.S.C. § 207; Second, he asserts that he is owed a debt because he was retaliated against in violation of 29 U.S.C. 215(a)(3). Debtor does not dispute that the provisions of 29 U.S.C. § 207, which requires the payment of one-and-one-half times the rate of regular pay for any overtime worked by an employee, were violated. 29 U.S.C. § 216(b) provides that any employer who violates 29 U.S.C. § 207 "shall be liable to the employee ... affected in the amount of their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages."[7] Therefore, it is clear that Plaintiff is owed a debt for the failure to pay the overtime wages to which he is entitled.[8] Plaintiff also asserts that he is owed a debt because he was retaliated against in violation

---

[7] Plaintiff did not prove the amount of unpaid overtime compensation to which he is due. The only evidence this court has of the amount of money paid to Plaintiff during the time he worked for Burns Excavating and Burns Construction are two pay stubs: The first pay stub shows that Plaintiff worked 40.75 hours the week of February 11, 2010 through February 17, 2010 and was paid $15.00 an hour for a total of $611.25; the second pay stub shows that Debtor worked 43.00 hours during the week of January 14, 2010 through January 20, 2010 and was paid $15.00 an hour for a total of $645.00. (Plaintiff's Exhibit 1). In addition, neither Plaintiff nor Debtor testified with any certainty about how often Plaintiff worked overtime during the time he worked for Burns Excavating and Burns Construction. Without more, this court is unable to liquidate Plaintiff's claim. However, because the liquidation of Plaintiff's claim is not necessary for this court to rule on Plaintiff's nondischargeability claim, this court will not address the issue.

[8] Although Debtor does not dispute that 29 U.S.C. § 207 was violated, he does dispute that he is liable for the violation. Debtor asserts that Burns Excavating was the employer of Plaintiff, and further asserts that Debtor is not liable for the debts of Burns Excavating, as it is a separate legal entity. Plaintiff asserts that Debtor is liable for the violation of 29 U.S.C. § 207 because Burns Excavating never came into existence under the laws of Alabama. As proof of this, Plaintiff admitted a document showing that a search for Burns Excavating on the Alabama Secretary of State website returns no results. (Plaintiff's Exhibit 2). Further, Alabama law provides: "All persons who

6

Case 11-70010-CMS    Doc 30    Filed 02/27/13    Entered 02/27/13 16:35:32    Desc Main
Document      Page 6 of 10

of 29 U.S.C. § 215(a)(3). Specifically, Plaintiff asserts that the Alabama State Unemployment Office was notified that Plaintiff received unemployment compensation benefits while being employed, and that it was Debtor who reported Plaintiff to the Alabama State Unemployment Office upon finding out that Plaintiff had instituted an action against Debtor in the United States District Court for the Northern District of Alabama for violations of 29 U.S.C. § 207. No evidence at trial was admitted in support of these assertions. Therefore, Plaintiff failed to prove that he is owed a debt because he was retaliated against in violation of 29 U.S.C. § 215(a)(3).

This court will next address whether the debt owed to Plaintiff for failure to pay overtime wages pursuant to 29 U.S.C. § 207 is one for willful injury. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S. Ct. 974, 977 (1998) (emphasis in original). Therefore, only acts committed with the "actual intent to cause injury" are willful. See id. "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64, 978. See also Maxfield v. Jennings (In re Jennings), 670 F. 3d 1329, 1334 (11th Cir. 2012) (quoting Hope v. Walker (In re Walker), 48 F. 3d 1161, 1163 (11th Cir. 1995)) ( stating that "proof of 'willfulness' requires 'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'"). This case is unusual in that the act and the injury are the same: Debtor failed to pay Plaintiff the overtime wages Plaintiff was legally entitled to pursuant to 29 U.S.C. § 207. At first blush, it would appear that this constitutes a willful injury: Debtor must have known that the failure to pay Plaintiff money rightfully owed would injure Plaintiff financially. However, to make such a ruling in this case would mean that every debtor who failed to pay a debt would be subject to a nondischargeability action brought pursuant to § 523(a)(6), as this court does not see a distinction between failing to pay overtime wages and failing to pay any other justly owed debt. In the absence of aggravating circumstances, such as an ability to pay or a history of acrimony between the parties,

---

assume to act as a limited liability company without authority to do so shall be jointly and severally liable for all debts and liabilities created by their so acting." ALA. CODE § 10A-5-1.05 (1975).

7

the failure to pay a justly owed debt is not grounds for a finding of willful injury. Compare Orr v. Marcella (In re Marcella), 463 B.R. 212, 221 (Bankr. D. Conn. 2011) (holding that failure to pay wages was not a willful injury where there was no evidence of diversion of assets, no evidence that the debtor lied to the plaintiff about the ability to timely pay her wages, and the financial records of the employer showed negative account balances and numerous overdrafts during the period Plaintiff was not being paid wages) and Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 37 (9th Cir BAP 2009) (affirming that failure to pay wages due under an employment contract was not a willful injury because the behavior of employer evidenced that there was no "willful intent to cause injury") with Petralia v. Jercich (In re Jercich), 238 F. 3d 1202, 1208-09 (9th Cir. 2001) (finding that debtor inflicted a willful injury on an employee by failing to pay employee's wages when debtor knew he owed the wages, debtor had the clear ability to pay the wages, but chose instead to use the money for debtor's own personal benefit).[9] No such aggravating circumstances are present in this case. Debtor testified that he could not afford to pay overtime wages because his worker's compensation insurance premiums increased to an unaffordable level when he did. The court found this testimony credible. Plaintiff disputes that he and the Debtor had an agreement concerning overtime pay. However, Plaintiff was employed by Debtor for approximately four years. He testified he kept his own hours and turned them in to get paid. He knew how many hours he worked, his hourly wage, and the amount of his pay check. He clearly was aware that he was not being paid overtime wages and the evidence was that he never complained about not getting paid overtime while employed by the Debtor. In addition, it is clear from the testimony of both parties that they had a friendly relationship before Plaintiff filed the lawsuit against Debtor in the United States District Court for the Northern District of Alabama. Plaintiff testified that Debtor was a good man who was good to everybody. Plaintiff further testified that he had a great time while he worked for Debtor. Debtor testified that he considered Plaintiff a good friend and that he would have done anything for Plaintiff

---

[9] Although none of the cases cited deal with the failure to pay overtime wages, this court feels that failing to pay an employee any wages at all is much worse than failing to pay overtime. Thus, these cases are relevant to the issue before this court: if a debt arising from the failure to pay wages is a dischargeable debt, then surely a debt arising from the failure to pay overtime wages is also a dischargeable debt.

8

Case 11-70010-CMS    Doc 30    Filed 02/27/13    Entered 02/27/13 16:35:32    Desc Main
Document      Page 8 of 10

prior to the filing of the lawsuit. Debtor further testified that Plaintiff was a very good employee. In addition, Debtor and Plaintiff both testified that Debtor helped Plaintiff numerous times while Plaintiff was employed with Burns Construction and Burns Excavating: First, Debtor allowed Plaintiff to use a work truck for personal use for two weeks when Plaintiff's personal vehicle broke down; Second, Debtor gave Plaintiff $500 on one occasion so that Plaintiff could visit his daughter in Texas; Third, Debtor gave Plaintiff an air compressor. There is no history of acrimony between the parties that would suggest Debtor refused to pay Plaintiff overtime because he wanted to injure Plaintiff.

In short, there is nothing in the evidentiary record to indicate that the failure to pay overtime was anything other than a failure to pay a justly owed debt which Debtor could not afford to pay. As such, Plaintiff failed to prove that the debt owed to Plaintiff for failure to pay overtime in violation of 29 U.S.C. § 207 is a debt for a willful injury. E.g., In re Marcella, 463 B.R. at 220 ("To hold that § 523(a)(6) is applicable to every failure to pay a debt, even in the absence of intentionally tortious conduct, would essentially render meaningless the protections afforded a debtor by the Bankruptcy Code, and vitiate its underlying purpose of providing relief to the 'honest but unfortunate debtor.'"); Parker v. Ferland (In re Ferland), No 09-5101, 2010 WL 2600588, at *4 (Bankr. M.D. Ga. June 21, 2010) ("The bankruptcy courts regularly encounter debtors who are overly optimistic about their ability to pay their debts. If mere failure to repay those debts constituted a willful and malicious injury, the bankruptcy discharge would be virtually eliminated."); and Ayoub v. Abdallah (In re Abdallah), No 5-11-ap-00040-JJT, 2012 WL 631845, at *1 (Bankr. M.D. Pa. Feb. 27, 2012) ("[I]f the failure to pay a just debt were the only criteria that would qualify under [§ 523(a)(6)], then no debt would ever be dischargeable. Congress clearly meant to limit this exception to acts done with the actual intent to cause injury."). Therefore, Plaintiff failed to prove that the debt owed to Plaintiff for failure to pay overtime wages was a debt for a willful injury. As such, this court finds that the debt owed to Plaintiff is not a debt caused by a willful and malicious injury and 11 U.S.C. § 523(a)(6) is not applicable.

## CONCLUSION

Plaintiff is owed a debt because he was not properly compensated for the overtime he worked while an employee at Burns Excavating and Burns Construction in violation of 29 U.S.C. § 207. However, the debt owed to Plaintiff is not a debt that resulted from a willful injury, making 11 U.S.C. § 523(a)(6) inapplicable in this case. Therefore, this court **OVERRULES** Plaintiff's objection to dischargeability brought pursuant to 11 U.S.C. § 523(a)(6) and finds that the debt owed to Plaintiff is dischargeable.

**DONE and ORDERED** this February 27, 2013.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge
